IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MARCO GUIRLANDO                                                                                         PLAINTIFF

v.                                             Civil No. 1:20-cv-01007

SHERIFF RICKY ROBERTS; CAPTAIN                                                                 DEFENDANTS
RICHARD MITCHAM; LT. KEVIN
PENDLETON; LT. PAUL KUGLER;
LT. BILLY PERRY; SGT JOHN WARD;
SGT. JEDIDIAH COTTON; DR. DEANNA
HOPSON; and NURSE SHERIE RICE

**REPORT AND RECOMMENDATION**

Before the Court is a Motion for Summary Judgment filed by Defendant Dr. Deanna Hopson. (ECF No. 70). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

**I. PROCEDURAL BACKGROUND**

Plaintiff is currently incarcerated in the Tallahatchie County Correctional Facility in Tutwiler, Mississippi. His claims in this lawsuit arise from alleged incidents which occurred during his incarceration in the Union County Detention Center ("UCDC") in 2019 and 2020.

Plaintiff filed his initial Complaint on March 12, 2020. (ECF No. 1). The following day, the Court ordered Plaintiff to file an Amended Complaint to state his claims against each Defendant with factual specificity on the Court's approved § 1983 form. (ECF No. 5). On April 29, 2020, Plaintiff filed an Amended Complaint. (ECF No. 20). On May 13, 2020, Plaintiff's application to proceed *in forma pauperis* was granted. (ECF No. 25). On May 27, 2020, Plaintiff

1

filed a Second Amended Complaint. (ECF No. 27).

On July 21, 2020, attorney Richard E. Worsham entered his appearance on behalf of Plaintiff. (ECF No. 40). On November 20, 2020, counsel for Plaintiff filed an Amended Complaint naming the following individuals as Defendants: Sheriff Ricky Roberts, Captain Richard Mitcham, Lieutenant Kevin Pendleton, Lieutenant Paul Kugler, Lieutenant Billy Perry, Sergeant John Ward, Sergeant Jedidiah Cotton, Dr. Deanna Hopson, and Nurse Sherie Rice. (ECF No. 60). Plaintiff generally alleges "Defendants subjected Plaintiff to physical, mental, and sexual abuse, failed to provide him with adequate medical treatment and failed to provide protection from the spread of COVID-19 while he was detained in their custody…[and] these constitutional violations were committed as a result of the polices, customs, and practices of Defendants." *Id.* at pp. 1-2. Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages. *Id.* at p. 12.

Specifically, Plaintiff states he was subjected to numerous incidents of abuse and unjustified punishments at the hands of Defendants and a list of incidents includes, but is not limited to:

    a. Defendant Richard Mitcham leaked grievances made by Plaintiff to staff members of the correctional facility and to inmates, which lead to assaults by inmates upon Plaintiff and abuse by correctional officers;
    b. Defendants, Lt. Billy Perry, Sgt. Ward and Sgt. Jedidiah Cotton subjected Plaintiff to mental abuse and physical abuse;
    c. Defendant Lt. Kevin Pendleton subjected Plaintiff to mental abuse;
    d. Defendant Lt. Kevin Pendleton withheld mail directed to Plaintiff;
    e. Defendant Sgt. Jedidiah Cotton sexually assaulted Plaintiff and turned off his body camera to prevent any recording of the poor medical treatment Plaintiff was receiving from the medical staff;
    f. Defendants Sheriff Ricky Roberts, Captain Richard Mitcham, Lt. Kevin Pendleton, Lt. Paul Kugler, Lt. Billy Perry, Sgt. Ward and Sgt. Jedidiah Cotton placed Plaintiff in the detention area colloquially referred to by staff and officers as 'the hole' as punishment for instigating a fight, even though

<ol type="a" start="7">
<li>he was attacked by another inmate for being an alleged informant;</li>
<li>Defendants Sheriff Ricky Roberts, Captain Mitcham, Kt. Kevin Pendleton, Lt. Paul Kugler, Lt. Billy Perry, Sgt. Ward and Sgt. Jedidiah Cotton ignored Plaintiff's request for medical treatment about an injury to his hand for a week;</li>
<li>Defendants Sheriff Ricky Roberts, Captain Richard Mitcham, Lt. Kevin Pendleton, Lt. Paul Kugler, Lt. Billy Perry, Sgt. Ward and Sgt. Jedidiah Cotton placed Plaintiff in solitary confinement for 20 days without justification;</li>
<li>Defendants Sheriff Ricky Roberts, Captain Richard Mitcham, Lt. Kevin Pendleton, Lt. Paul Kugler, Officer Lt. Billy Perry, Sgt. Ward and Sgt. Jedidiah Cotton placed Plaintiff in the 'intake pod' which is used to quarantine new inmates to determine if they have the COVID-19 virus;</li>
<li>Defendant Nurse Sherie Rice initially improperly wrapped Plaintiff's injured hand and did not check on the status of the injury while Plaintiff was in solitary confinement;</li>
<li>Defendant Sgt. John Ward assaulted Plaintiff while taking him to solitary confinement and made threats to Plaintiff;</li>
<li>Defendant Lt. Kevin Pendleton encouraged other inmates to retaliate against Plaintiff for his grievances;</li>
<li>Defendant Lt. Kevin Pendleton watched other inmates steal Plaintiff's possessions and took no action against the inmates or to prevent the actions of the other inmates;</li>
<li>Defendant Lt. Kevin Pendleton informed other inmates that Plaintiff was filing grievances against them;</li>
<li>Defendants Cpt. Richard Mitcham, Lt. Kevin Pendleton, Lt. Paul Kugler, and Lt. Billy Perry labeled Plaintiff as an informant;</li>
<li>Defendants Cpt. Richard Mitcham, Lt. Kevin Pendleton, Lt. Paul Kugler, and Sgt. Jedidiah Cotton retaliated against Plaintiff for filing grievances;</li>
<li>Defendants Cpt. Richard Mitcham, Lt. Kevin Pendleton, Lt. Paul Kugler, and Lt. Billy Perry refused to act upon any grievances filed by Plaintiff;</li>
<li>Defendants Cpt. Richard Mitcham, Lt. Kevin Pendleton, and Lt. Paul Kugler refused to take action against any inmate for stealing Plaintiff's property or any action to stop said stealing;</li>
<li>Defendants Sheriff Ricky Roberts, Cpt. Richard Mitcham, Lt. Kevin Pendleton, and Lt. Paul Kugler were aware of the abuse and mistreatment of Plaintiff by the officers and inmates at the Union County Jail a/k/a Union County Detention Center and took no action to stop said abuse and mistreatment. In fact, Defendants, Sheriff Ricky Roberts, Cpt. Richard Mitcham, Lt. Kevin Pendleton, and Lt. Paul Kugler encouraged said abuse and mistreatment;</li>
<li>Defendant Dr. Deanna Hopson refused to provide necessary medical treatment to Plaintiff;</li>
</ol>

    u. Defendant Dr. Deanna Hopson refused to place Plaintiff's hand in a cast, allow Plaintiff to see as specialist, or provide any follow-up therapy;
    v. Defendant Dr. Deanna Hopson refused to follow the proper sanitary protocol as it pertains to changing the wrap on Plaintiff's hand;
    w. Defendant Nurse Sherie Rice refused to provide necessary medical treatment to Plaintiff;
    x. Defendant Nurse Sherie Rice refused to place Plaintiff's hand in a cast, allow Plaintiff to see a specialist, or provide any follow-up therapy;
    y. Defendant Nurse Sherie Rice refused to follow the proper sanitary protocol as it pertains to changing the wrap on Plaintiff's hand;
    z. Defendants Sheriff Ricky Roberts, Cpt. Richard Mitcham, Lt. Kevin Pendleton, and Lt. Paul Kugler, refused to follow proper procedure in the imposition of punishment of Plaintiff;
    aa. Defendants Sheriff Ricky Roberts, Cpt. Richard Mitcham, Lt. Kevin Pendleton, and Lt. Paul Kugler refused to follow the directives of the Arkansas Department of health regarding the reduction of the spread of COVID-19 in correctional facilities issued on April 15, 2020.

(ECF No. 60, pp. 3-6).

In Count I, Plaintiff claims Defendants Roberts, Mitcham, Pendleton, Kugler, Perry, Ward, Cotton, Hopson, and Rice were aware of Plaintiff's serious medical condition "but deliberately disregarded it". (ECF No. 60, p. 7-9). In Count II, Plaintiff alleges Defendants Roberts, Mitcham, Pendleton, Kugler, Perry, Ward, Cotton, Hopson, and Rice "subjected Plaintiff to physical, mental, and sexual abuse in violation of Plaintiff's constitutional rights." *Id.* at p. 9. In Count III, Plaintiff alleges Defendants Roberts, Mitcham, Pendleton, Kugler, Perry, Ward, Cotton, Hopson, and Rice "refused to follow the directive of the Arkansas Department of Health, issued on April 15, 2020, to reduce the spread of COVID-19 in correctional facilities". *Id.* at p. 10.

Plaintiff also asserts a breach of contract claim under state law in Count IV against Defendants Hopson and Rice. (ECF No. 60, pp. 11-12). He claims these Defendants have a contract of employment with Union County to provide medical care and treatment for inmates in

the UCDC and Plaintiff was a third-party beneficiary to that contract. Plaintiff alleges Defendants Hopson and Rice breached their duty to provide medical care and treatment to him. *Id.* at p. 12.

On March 18, 2021, Defendant Deanna Hopson filed the instant Motion for Summary Judgment arguing: 1) Plaintiff's medical records and the physician affidavit from an expert demonstrate she provided Plaintiff with adequate care and was therefore not deliberately indifferent to Plaintiff's serious medical needs; 2) she is entitled to summary judgment on Plaintiff's inmate abuse claim because Plaintiff has not alleged any facts supporting his claim of abuse against her; 3) she is entitled to summary judgment on Plaintiff's Covid-19 claim because Plaintiff has not alleged she was involved in the UCDC's handling of Covid-19 or had the authority to determine its policies in response to the Covid-19 pandemic; and 4) she is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff lacks sufficient proof, in the form of expert testimony from a qualified physician, to demonstrate any breach in the applicable standard of care by her, nor can Plaintiff satisfy any of the other requisites necessary to main an action for medical injury in the state of Arkansas. (ECF No. 70). In support of her motion, Defendant Hopson has submitted a Statement of Facts (ECF No. 72), a Brief in Support of the motion (ECF No. 71), forty-five (45) pages of Plaintiff's medical records from the UCDC and SAMA HealthCare Services (ECF No. 70-1), Dr. Fischer's affidavit (ECF No. 70-2), and Discovery Requests and correspondence with Plaintiff's attorney. (ECF Nos. 70-3, 70-4).[1]

On April 29, 2021, Plaintiff filed a Response to Defendant Hopson's motion. (ECF No. 82). He also filed a disputed Statement of Facts (ECF No. 84), and a Brief in Support of his

---

[1] That same day the remaining Defendants filed a Motion for Summary Judgment. (ECF No. 73). The Court will enter a separate Report and Recommendation on this motion. However, the Court will consider the relevant portions of Plaintiff's deposition in (ECF No. 74) and cite to it accordingly in this Report and Recommendation.

Response. (ECF No. 86). Plaintiff argues Defendant Hopson is not entitled to summary judgment because he "filed several grievances which should be viewed in the light most favorable to Plaintiff" concerning the following: "…failure to provide suitable masks…failure to treat wrist…failure to properly test for Covid…failure to promptly provide medical treatment…insufficient medical treatment…failure to properly document medical issues…cutting of hand…injury on table…and failure to address pain." (ECF No. 86-1).

On May 6, 2021, Defendant Hopson filed a Reply. (ECF No. 88). She argues Plaintiff's Response points to numerous allegations which relate only to other Defendants, Plaintiff's self-serving grievances are insufficient to defeat the summary judgment motion, disagreement with a doctor's treatment decisions is not actionable under 1983, there is no evidence she was deliberately indifferent to Plaintiff's serious medical needs, and there are no facts showing she had any control over the UCDC's response to the COVID-19 pandemic or that she violated a duty owed to Plaintiff relating to the pandemic. *Id.*

## II. FACTUAL BACKGROUND

Defendant Hopson is a physician who contracts with the UCDC to provide medical services to the inmates. She treated Plaintiff in 2019 and 2020 while he was incarcerated there. (ECF No. 70-1).

Plaintiff initially sought treatment on April 3, 2019, following an altercation with another inmate, and presented with bruising and swelling on the palm and top of his right hand. (ECF No. 70-1, p. 3). That same day Defendant Hopson referred Plaintiff to SAMA Healthcare Services for an x-ray, which showed a slightly impacted fracture to the head and neck of Plaintiff's second metacarpal. *Id.* at pp. 3, 12. In response, she prescribed Plaintiff Ibuprofen and Acetaminophen,

and ordered that Plaintiff's hand be wrapped with soft roll in his palm, keeping the fingers cupped. *Id.* at p. 3. The following day, after consulting with Dr. Massanelli, an orthopedist, Defendant Hopson also ordered Plaintiff's fingers be buddy taped together by the UCDC's medical staff daily. *Id.*

While there were multiple instances where Plaintiff refused to allow fresh wrapping to be applied, or otherwise removed his tape against medical orders, by and large the wrapping was changed as ordered. (ECF No. 70-1, pp. 5, 6, 10, 11, 20, 21, 22).

On April 4, 2019, Plaintiff refused the pain relief medication prescribed to him and stated he was not in pain. (ECF No. 70-1, p. 4).

On April 8, 2019, Defendant Hopson reviewed Plaintiff's x-ray with him and noted he was doing well with buddy taping his fingers and his bruises and swelling were resolving. (ECF No. 70-1, p. 4).

On April 15, 2019, Plaintiff was evaluated by Defendant Hopson. She noted "healing index MP Joint FX-still aligned". (ECF No. 70-1, p. 4).

On April 22, 2019, Defendant Hopson evaluated Plaintiff again and noted Plaintiff's knuckle fracture was stable and she removed his old buddy wrap and rewrapped his hand. (ECF No. 70-1, p. 5).

On April 29, 2019, Defendant Hopson saw Plaintiff and noted his right knuckle fracture was stable. (ECF No. 70-1, p. 6). She then ordered a continuation of the daily buddy wrap tape change. *Id.*

Defendant Hopson evaluated Plaintiff again on May 9, 2019, during which she noted healing on his right second MP distal fracture. (ECF No. 70-1, p. 7). Dr. Hopson ordered that

Plaintiff continue buddy wrapping his fingers and that his hand be x-rayed again around May 23, 2019. *Id.*

Pursuant to Defendant Hopson's order, another set of x-rays were taken of Plaintiff's hand on June 10, 2019. *Id.* at p. 8.

On June 14, 2019, Dr. Hopson ordered the nurses to discontinue buddy wrapping Plaintiff's hand and ordered Plaintiff to start to work his knuckles. (ECF No. 70-1, 11). Defendant Hopson ordered Plaintiff not to do pushups or put pressure on his hand. *Id.* When Nurse Kasie Sanford relayed the order to Plaintiff, he reported he had done pushups earlier and his hand was sore. *Id.* Nurse Sanford emphasized to Plaintiff that he should not do pushups or anything that would cause pressure to the hand and knuckle area and Plaintiff expressed understanding. *Id.*

Dr. Hopson reevaluated Plaintiff on March 16, 2020, because Plaintiff complained of nerve pain. Plaintiff requested to see a specialist for his hand and stated he wanted surgery. (ECF No. 70-1, p. 25). Defendant Hopson determined there was no need for an x-ray because Plaintiff's bones were all stable. *Id.* She offered Plaintiff Tylenol or Ibuprofen, but Plaintiff refused. *Id.* Defendant Hopson also explained to Plaintiff that he had full range of motion and there was no need to see a surgeon. *Id.*

Defendant Hopson treated Plaintiff again on March 30, 2020, because Plaintiff complained of pain in his right index finger. (ECF No. 70-1, pp. 26, 34). Plaintiff stated he wanted to get the opinion of another doctor and insisted on seeing a surgeon. *Id.* Defendant Hopson explained to Plaintiff that he had full function and range of motion, so she was not aware of any surgeon that would consider looking at a hand or finger in the good condition his hand was in. *Id.* She informed Plaintiff he should continue with hand squeezing exercises to strengthen his right hand. *Id.*

On May 4, 2020, Plaintiff was seen by Defendant Hopson for lower back pain from "table falling on me". She prescribed 800 MG of Ibuprofen if Plaintiff was eating but noted not to give the medication to him on an empty stomach. She also ordered Plaintiff be moved to nursing due to his hunger strike. (ECF No. 70-1, pp. 27, 37).

On May 11, 2020, Plaintiff was evaluated by Defendant Hopson due to his hunger strike. (ECF No. 70-1, pp. 38-39). It was noted Plaintiff was eating again, and Defendant Hopson ordered the nurses to document that Plaintiff was eating every meal tray and check his weight daily for seven days. *Id.*

On May 18, 2020, Defendant Hopson evaluated Plaintiff noting no weight loss and that Plaintiff had been eating all his meal trays. (ECF No. 70-1, p. 41). On May 19, 2020, Dr. Hopson cleared Plaintiff to go back to a general population pod. *Id.* On June 8, 2020, Defendant Hopson discontinued the order for Plaintiff to receive daily weight checks. *Id.* at p. 43.

Defendant Hopson's expert, Dr. Michael Fischer, has opined, based on his education, training, and experience; his review of Plaintiff's medical records; and principles of internal medicine, that Dr. Hopson satisfied the standard of care required when caring for Plaintiff and that the care and treatment Plaintiff received while in Defendant Hopson's care was adequate. (ECF No. 70-2). Further, Dr. Fischer states in his opinion, to a reasonable degree of medical certainty, no act or omission by Defendant Hopson caused or contributed to any injury to Plaintiff. *Id.*

On November 20, 2020, Plaintiff testified under oath at his deposition. (ECF No. 74, pp. 1-222). Plaintiff testified Defendant Hopson never changed the wrap on his hand. (ECF No. 74-1, p. 146). He states, "So I know that what Hopson perhaps ordered was not in line with medical care, but my interaction with her was limited and I saw her maybe half a dozen times through the

9

whole time I was there." *Id.* at p. 169. He goes on to testify he is "not sure" if the medical records Defendant Hopson produced are inaccurate. *Id.*

Plaintiff testified he has never been licensed to practice medicine in any state, he has not received a degree from any medical school to be a physician, he has never trained to be a medical doctor, nor has he ever worked in a hospital or medical clinic. However, Plaintiff stated he has taken some college courses in biology and anatomy. (ECF No. 74-1, pp. 169-170).

Plaintiff testified, despite what his complaint alleges, Defendant Hopson was not involved in any type of sexual assault or physical or mental abuse on him. (ECF No. 74-1, p. 174-175).

He went on to testify he "didn't feel like my medical requests were being taken seriously." (ECF No. 74-1, 175). "…Especially the time when I complained about the lumbago – if I am saying that right – the back injury. That was one time especially where she just seemed to laugh off everything I said." *Id.* at p. 177. Plaintiff testified his back injury occurred after May 18, 2020. *Id.* at p. 178.

Plaintiff testified the bones in his right hand are "out of place, and the bones were damaged, and they did not heal properly…" (ECF No. 74-1, p. 179). Plaintiff generally described his visits with Defendant Hopson as follows: "She would come in, and she would say, 'How does your hand feel?' And I would say, 'It hurts. It is not healing right.' And I would basically express whatever concerns were…I would usually ask, 'Hey, can I [put my hand] in a cast? Can I get surgery on this?' or 'Can I see a second doctor about this.' And she would just say, no, she doesn't believe that is warranted." *Id.* at pp. 180-181.

Plaintiff testified he "can't remember" ever refusing to allow any nurses to remove the wrap on his hand. (ECF No. 74-1, p. 200). "…There might have been an instant when I was

seeing my lawyer…" and he removed the wrap himself to show them his injury. *Id.* In addition, Plaintiff stated he removed the wrap "taping" from his hand "after a week of mildew and not being changed…this is after it had already been on for a week, and it was growing mold." *Id.* at p. 202.

Plaintiff agreed during the first week after his hand was injured his fingers were all taped down "in a fist-like manor" but after that "…it was a week or five days or six days or eight days…and then we had the buddy wrap done, and this was done for about a week without it being changed…" (ECF No. 74-1, p. 205). He also testified, "…they started retaping it every day after they realized their mistake and – but I think by that point it might have been too late. It was about a week of the wrong wrap, a week of not re-wrapping it, and so it was nearly every day". *Id.* at p. 209.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

### A. Count I – Medical Need

Plaintiff alleges Defendant Hopson was deliberately indifferent to his serious medical needs when she treated him in 2019 and 2020 at the UCDC. He specifically describes his claims against her as follows: "t. Defendant Dr. Deanna Hopson refused to provide necessary medical treatment to Plaintiff; u. Defendant Dr. Deanna Hopson refused to place Plaintiff's hand in a cast, allow Plaintiff to see a specialist, or provide any follow-up therapy; v. Defendant Dr. Deanna Hopson refused to follow the proper sanitary protocol as it pertains to changing the wrap on Plaintiff's hand…" (ECF No. 60, p. 6). For the reasons set forth below, I recommend Defendant Hopson be granted summary judgment on these claims.

Plaintiff was a pretrial detainee at the time his claims arose and therefore his claims are analyzed under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520 (1979). The Eighth Circuit has held under the Fourteenth Amendment, pretrial detainees are entitled to at least as great protection as that afforded to convicted prisoners under the Eighth Amendment. *Owens v. Scott Cnty Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam). The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference

to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Long*, 86 F.3d at 765).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany,* 132 F.3d at 1239). To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to

13

the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Here Plaintiff was diagnosed by a physician as having a fracture of his right index finger and therefore, his injury is a serious medical condition. As for Plaintiff's testimony during his deposition about inadequate care surrounding his complaint of back pain, the Court finds this claim is not properly before the Court as Plaintiff did not make any allegations concerning this issue in his Amended Complaint or any of his previous Complaints in this lawsuit. Accordingly, the only question for the Court is whether Defendant Hopson was deliberately indifferent to Plaintiff's fractured finger.

Courts "hesitate to find an [E]ighth [A]mendment violation when a prison inmate has received medical care." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). Here, the summary judgment record contains approximately 43 pages of medical records documenting Plaintiff's medical care and treatment during his time in the UCDC in 2019 and 2020. On April 3, 2019, Plaintiff sought treatment for his injured hand. That same day, Defendant Hopson ordered Plaintiff to be transported to a hospital for x-rays which revealed he had a slightly impacted fracture to the head and necks of Plaintiff's second metacarpal on his right hand. In response, Defendant Hopson prescribed Plaintiff Ibuprofen and Acetaminophen and ordered that Plaintiff's hand be wrapped with soft roll in his palm keeping the fingers cupped. After consulting with an orthopedist on April 4, 2019, Defendant Hopson ordered that Plaintiff's fingers be buddy taped together by medical staff daily. She also met with Plaintiff and reviewed his x-rays with him, noted he was doing well

with buddy taping his fingers, and that his bruises and swelling were resolving. Defendant Hopson also ordered Plaintiff to practice hand squeezing exercises to strengthen his hand.

Defendant Hopson reevaluated Plaintiff's fractured finger at least six (6) times and ordered another set of x-rays six-weeks after the injury occurred. Then in May of 2020, Defendant Hopson evaluated Plaintiff in response to his complaint of nerve pain. During this medical visit, Defendant Hopson determined there was no need for Plaintiff to see a surgeon or get additional x-rays because he had full range of motion in his hand. Although Plaintiff disputes the adequacy of his medical care, he has not provided any evidence which gives rise to a genuine issue of fact. *See Delaney*, 132 F.3d at 1240 (holding in the face of medical records indicating treatment was provided and physician affidavits indicating treatment was adequate, a plaintiff may not create a question of fact simply by alleging he did not feel the treatment was adequate.)

The Eighth Circuit has "repeatedly held that a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail to rise to the level of a constitutional violation." *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner's disagreements on location of rehabilitation for burn injuries, amounts of pain medication, and frequency of bandage changes failed to state deliberate indifference).

On the facts presented here, the Court concludes while Plaintiff may not have received *perfect* care from Defendant Hopson, the care he received was constitutionally sufficient. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (Eighth Amendment does not require that prisoners receive "unqualified access to health care"); *Schaub v. VonWald,* 638 F.3d 905, 935 (8th Cir. 2011) (Beam, J., dissenting) ("[I]nmates are only entitled to adequate medical care, not the best care possible.") (internal quotation marks and citation omitted). Accordingly, I recommend

Defendant Hopson be granted summary judgment on Plaintiff's claims she denied him adequate medical care.

### B. Count II – Inmate Abuse and Count III – Covid 19

In Count II, Plaintiff generally alleges Defendant Hopson and others subjected him to physical, mental, and sexual abuse in violation of Plaintiff's constitutional rights. In Count III, Plaintiff generally alleges Defendant Hopson and others violated his constitutional rights when they failed to follow the directive issued by the Arkansas Department of Health on April 15, 2020, to reduce the spread of Covid -19 in correctional facilities.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which if proven true, would demonstrate the named defendants violated the plaintiff's federal constitutional rights while acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Pleadings may not be merely conclusory. The complaint must allege facts, which if true, state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

Plaintiff does not provide any specific factual allegations as to how Defendant Hopson violated his rights under Counts II or III. In addition, Plaintiff testified in his deposition that Defendant Hopson did not sexually assault him or subject him to mental or physical abuse. Moreover, there is no summary judgment evidence indicating Defendant Hopson had any

responsibility, control, or personal involvement in how the UCDC responded to the Arkansas Department of Health's Covid – 19 directive.

Accordingly, Plaintiff's claims against Defendant Hopson based on physical, mental, or sexual abuse and failure to comply or follow the Arkansas Department of Health's Covid 19 directives fail as a matter of law. Accordingly, I recommend Defendant Hopson be granted summary judgment on these claims.

### C. Count IV – Breach of Contract

Plaintiff alleges under state law that Defendant Hopson had a contract of employment with Union County to provide medical care and treatment to Plaintiff while he was incarcerated in the UCDC. Plaintiff goes to claim, as a beneficiary of that contract she had a duty to provide medical care and treatment to him. Plaintiff alleges she breached this duty and he has incurred damages. Defendant Hopson argues this claim is an action for medical injury under governing Arkansas law, and Plaintiff has failed to present expert testimony to go forward with the claim under Ark. Code Ann. § 16-114-201, et. seq.

The Court's subject matter jurisdiction in this action is premised on the existence of a federal claims – namely, the alleged deliberate indifference to Plaintiff's medical needs, inmate abuse, and failure to comply with directives to limit the spread of Covid - 19. Jurisdiction over the state breach of contract claim or a negligence claim under the Arkansas Medical Malpractice Act exists solely by virtue of the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides jurisdiction over state law claims forming part of the same "case or controversy" as federal claims.

The exercise of supplemental jurisdiction is discretionary, and where all federal claims have been dismissed prior to trial, the factors to be considered in deciding whether to exercise such jurisdiction – judicial economy, convenience, fairness, comity, and predominance of state issues – typically go against doing so. *Johnson v. City of Shorewood, Minn.,* 360 F.3d 810, 819 (8th Cir. 2004) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). *Accord, e.g., United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Accordingly, I recommend the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Hopson for breach of contract or medical malpractice and dismiss the claims without prejudice. *See* 28 U.S.C. § 1367(c)(3) (recognizing a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction").

### V. CONCLUSION

For the reasons stated above, I recommend Defendant Hopson's Motion for Summary Judgment (ECF No. 70) be **GRANTED** and Plaintiff's individual capacity claims against her for denial of medical care, sexual assault, mental and physical abuse, and failure to follow Covid 19 directives under 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE.** I also recommend Plaintiff's state law claims against Defendant Hopson for breach of contract and medical malpractice be **DISMISSED WITHOUT PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 8th day of July 2021.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE